IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KERRIN A. BARRETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:21-cv-00107 (RDA/JFA) |
| | ) |
| PAE, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on PAE, Inc.'s ("Defendant") Second Motion to Dismiss (Dkt. 19) Kerrin A. Barrett's ("Plaintiff") Amended Complaint (Dkt. 15). The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering Defendant's Memorandum in Support of its Motion to Dismiss (Dkt. 20), Plaintiff's Opposition (Dkt. 26), and Defendant's Reply (Dkt. 30), the Court GRANTS the Motion to Dismiss for the reasons that follow.

### I. BACKGROUND[1]

Plaintiff's Amended Complaint arises out of events that began during the summer of 2016, when she allegedly discovered Defendant was misrepresenting its performance with respect to its Corrections System Support Program ("CSSP") government contract with the U.S. Department of State ("DoS"). Dkt. 15 ¶¶ 9, 15-16, 52. Proceeding *pro se*, Plaintiff has sued Defendant. *Id.* ¶¶

---

[1] For purposes of considering the Motions, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1-4. This is the second federal lawsuit Plaintiff has filed related to these events. *See Barrett v. PAE Government Services, Inc., et al.*, No. 1:18-cv-980 (E.D. Va.) ("*Barrett I*").

1. *Barrett I*

Plaintiff filed her first Complaint on August 8, 2018, an Amended Complaint on October 10, 2018, and a Second Amended Complaint ("SAC") on October 31, 2018, alleging unlawful seizure, a civil conspiracy to violate constitutional rights, and false imprisonment. *See Barrett I*, Dkt. 38. Plaintiff retained legal counsel in her first case. In her detailed 322-paragraph SAC, Plaintiff alleged 14 counts against members of the Arlington County Police Department ("ACPD"), Brian Galway who performed mental health assessments for the Arlington County Department of Human Services ("Arlington DHS"), PAE Government Services, Inc. ("PAE") and certain of its employees. The named PAE employee-defendants ("PAE Employee Defendants") were William Lietzau, the Vice President of the Government Services Division and General Counsel, Sean Horner, a Security Manager, and Shanedria Wilborn, the Human Resources Manager.

The SAC described Plaintiff's educational background and her work for PAE Government Services, Inc. from April 2012 to July 2013 and from November to December 2015 as a contractor. Plaintiff also alleged that from 2014 to 2016, she was living and working in Dubai as an independent consultant. During that time, Plaintiff described numerous stalking incidents by a Pakistani gang leading up to her return to the United States in 2016. The SAC documents Plaintiff's return to PAE first as a contractor in early 2016 and then as an employee with the role of "Senior Monitoring and Evaluation Advisor" for the CSSP in Afghanistan. She detailed her responsibilities in monitoring program performance data for the DoS and gathering prison statistics while working out of PAE's Arlington, Virginia office. In that capacity, Plaintiff alleged she

discovered that "PAE was fraudulently overstating its performance under the CSSP contract" and that she continuously raised this issue with PAE senior managers. Dkt. 38 ¶¶ 44, 47. Moreover, Plaintiff alleges that Lietzau engaged in a conspiracy with other PAE employees

> to discredit Dr. Barrett through a plan that would claim (falsely) that she was a danger and a threat to others, have the police come to PAE's office to remove her from the building and take her to a hospital, and once at the hospital, claim (again, falsely) that she made a threat about 'bombing Pakistan,' which would ensure her commitment to the psychiatric ward of the hospital, which would result in the revocation of her security clearances, her termination from PAE, and the elimination of a source of oversight over PAE's reporting practices on the CSSP contract.

*Id.* ¶ 49; *see also id.*

This plot allegedly resulted from Plaintiff's complaints to Lietzau and others at PAE not only about the false reporting related to the CSSP performance metrics but also Plaintiff's reporting of having been stalked and harassed in and outside her office. The SAC documents how Plaintiff then spoke with Horner about the incidents and revealed she owned a registered firearm. In addition, the SAC details alleged subsequent discussions that ensued among Horner, Lietzau, Wilborn and Plaintiff's co-workers. Plaintiff then recounts the events of the week of July 10, 2017 whereby Horner coordinated with ACPD to meet Plaintiff at her office and remove her from the premises "on the pretense that she was a threat and danger to others." *Id.* ¶ 80. Plaintiff then alleged that she was removed from the premises following an abrasive "interrogation" by the officers. *Id.* ¶¶ 105-06, 119, 122. The SAC further describes the aftermath of Plaintiff's removal from the PAE premises, which included being committed to the psychiatric ward of Virginia Hospital Center for several days after both an Emergency Custody Order ("ECO") and Temporary Detention Order ("TDO") were issued against Plaintiff. A July 17, 2017 commitment hearing held before a magistrate resulted in Plaintiff's release after the judge determined she was not a danger to herself or others.

The SAC further confirms that Plaintiff's admission to a psychiatric hospital "did [] lead to the revocation of her security clearances, her termination from PAE, and the elimination of any need to address the security concerns (and fraudulent contract reporting ) that [Plaintiff] had been raising as an employee of PAE." *Id.* ¶ 94. Plaintiff received a letter on January 15, 2018, confirming that PAE was ending her employment effective January 31, 2018. *Id.* ¶ 242. The SAC sought compensatory and punitive damages in connection with the events giving rise to the entering of the TDO and ECO on her permanent record, the "tens of thousands of dollars in doctor and hospital bills," and the impact of her psychiatric commitment on her "medical record and insurance profile." *Id.* ¶ 244.

On January 25, 2019, the Court granted the defendants' motions to dismiss, which led to the complete removal of PAE Government Services, Inc. and the PAE Employee Defendants from the case and winnowed down the number of plausible claims against the remaining defendants. *Barrett v. PAE Gov't Servs., Inc.*, No. 1:18-cv-980 (AJT/TCB), 2019 WL 10814589 (E.D. Va. Jan. 25, 2019). On April 9, 2019, the Court granted summary judgment for the remaining defendants. *Barrett v. PAE Gov't Servs., Inc.*, No. 1:18-cv-980 (AJT/TCB), 2019 WL 10814594 (E.D. Va. Apr. 19, 2019). Plaintiff appealed the Court's rulings and the Fourth Circuit affirmed each of the Court's rulings on September 15, 2020. *Barrett v. PAE Gov't Servs., Inc.*, 975 F.3d 416 (4th Cir. 2020). On May 24, 2021, the Supreme Court denied Plaintiff's petition for a writ of certiorari to the Fourth Circuit. *Barrett v. PAE Gov't Servs., Inc.*, 141 S. Ct. 2677 (2021) (Mem.).

2. *Barrett II*

On July 12, 2020, Plaintiff filed a whistleblower retaliation complaint pursuant to the National Defense Authorization Act ("NDAA") with the Office of Inspector General ("OIG") at

4

the DoS, which subjected Plaintiff to a 210 day exhaustion period to expire on February 7, 2021.

Dkt. 15 ¶ 358-59.  On October 21, 2020, Plaintiff received a letter from the OIG noting that:

> [Plaintiff's] complaint indicated [she] previously addressed PAE's alleged reprisal in a civil action filed in [*Barrett I*], which the court dismissed . . . .  In June 2019 you filed an appeal to the U.S. Court of Appeals for the Fourth Circuit, which affirmed the lower court's dismissal of the claims against PAE and its employees.  Therefore, as dictated by the statute, OIG will not investigate your complaint because it has previously been addressed in a judicial proceeding.

Dkt. 26-6 at 2 (internal footnotes omitted).

This time appearing before this Court *pro se*, Plaintiff filed a new lawsuit on January 29, 2021 and an Amended Complaint on March 9, 2021, which added the NDAA claim pursuant to 41 U.S.C. § 4712, following the expiration of the 210-day administrative exhaustion period.  Dkt. Nos. 1; 15.  Aside from identical allegations from her pleadings in *Barrett I*, of which there are many, in this action Plaintiff alleges additional detail surrounding the nature of the fraudulent reporting practices on the CSSP contract already disclosed in the SAC from *Barrett I*.  Dkt. 15 ¶¶ 19-69.  Plaintiff also provides additional detail regarding her attempts to flag the fraudulent practices and the subsequent dismissiveness of senior management.  *Id.* ¶¶ 20, 32, 56, 58, 67-74.  Lastly, Plaintiff describes, in more detail, the retaliatory actions taken to ostracize Plaintiff from her duties and responsibilities and the period of time from the dismissal of her TDO until her eventual firing.  *Id.* ¶¶ 64, 311-24.

Plaintiff brings several new claims against PAE, Inc as the sole defendant.  Under a liberal construction of Plaintiff's Amended Complaint, she alleges a claim against Defendant for retaliation, discrimination, harassment, and damaging her professional standing pursuant to 31 U.S.C. § 3730(h) of the False Claims Act ("FCA").  *Id.* ¶¶ 328-56.  Plaintiff also alleges a claim against Defendant for retaliation against her in her capacity as a whistleblower with respect to

the gross mismanagement of a Federal contract, pursuant to 41 U.S.C. § 4712 of the NDAA.  *Id.* ¶¶ 357-70.  Plaintiff seeks compensatory damages, punitive damages, and other relief.  *Id.* at 65.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal when the Plaintiff has failed to state a claim for which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Two principles govern the application of the *Twombly* pleading standard.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id* at 679.  A plaintiff has failed to state a claim where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  *Id.*

Mindful that Plaintiff is proceeding *pro se*, this Court liberally construes his filings.  *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014).  That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of his obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into his advocate.  *Green v. Sessions*, No. 1:17-cv-1365, 2018 WL 2025299, at *8 (E.D. Va.), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

## III.  ANALYSIS

The facts alleged in Plaintiff's new Amended Complaint clearly arise out of the same nucleus of operative fact as the claims she brought in *Barrett I*: her monitoring and investigation of the CSSP reports for PAE from May 2016 until July 2017, her involuntary commitment to a

psychiatric ward by PAE, and her eventual termination. Defendant moves to dismiss Plaintiff's Amended Complaint on the grounds that each of Plaintiff's claims are precluded. This Court agrees.

Defendant seeks to dismiss all claims against them under the doctrine of claim preclusion. Although claim preclusion is an affirmative defense, a defendant may raise it on a Rule 12(b)(6) motion to dismiss if the defense raises no disputed issues of fact. *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000); *Thomas v. Consolidation Coal Co.*, 380 F.2d 69, 75 (4th Cir. 1967).

Rooted in *res judicata* principles, the doctrine of claim preclusion "bars further claims by parties or their privies based on the same cause of action" when there has been a "final judgment on the merits" in an earlier suit. *Harnett v. Billman*, 800 F.2d 1308, 1312 (4th Cir. 1986) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). Requiring a final judgment on the merits "precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891, (2008) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-08 (2001)). This Court looks to three elements when deciding whether claim preclusion applies, asking whether there is: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016) (quoting *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003)). Ultimately, claim preclusion promotes "[j]udicial efficiency and finality" of decisions. *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 325 (4th Cir. 2004).

       1. Final judgment on the merits in a prior suit.

"The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits." *Moitie*, 452 U.S. at 399 n.3; Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a [Rule 12(b)(6) dismissal] . . . operates as an adjudication on the merits."). Moreover, "a district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice." *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985). "Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties." *Walls v. Wells Fargo Bank, N.A.*, 557 F. App'x 231, 233 (4th Cir. 2014).

Here, Plaintiff argues that a final judgment on the merits was not made in the earlier suit *as to the claims Plaintiff raises in the present case*. However, the claim preclusion test adopted by this circuit does not require that the prior suit involve a final judgment on the merits regarding the claims raised in a subsequent proceeding. If it did, there would be no need to apply the second prong assessing the nature of the facts that give life to the claims in the two proceedings. Because the Court's order granting the motion to dismiss in *Barrett I* represented a decision on the merits and is presumed to be with prejudice as no statement to the contrary was made in the opinion, this Court finds that *Barrett I* represented a final judgment on the merits.

       2. Identity of the cause of action in both the earlier and the later suit.

Relying on several cases outside of this circuit, Plaintiff argues that the claims in *Barrett* differ materially from those raised in the instant case. Engaging in what can best be described as reverse circular reasoning, Plaintiff cites several cases from other circuits finding claim preclusion and attempts to distinguish the facts of her case to suggest her claims ought to survive. Dkt. 26 at 13-14. Plaintiff highlights the fact that her *Barrett I* claims centered on her forceful removal from

her workplace and her involuntary commitment to a psychiatric ward, *i.e.* her alleged unlawful seizure. Whereas the present matter involves claims resulting from her wrongful termination, which occurred six months after the events giving rise to her claims in *Barrett I*. Lastly, Plaintiff asserts that her administrative filing before the DoS, which raises the issue of whistleblower retaliation with respect to gross mismanagement of Federal contracts, requires the Court to at least hear that claim *de novo* following the expiration of the 210-day exhaustion period.[2]

Defendant argues that the claims undergirding the Amended Complaint in *Barrett II* are rooted in the same cause of action and therefore Plaintiff had ever opportunity in *Barrett I* to assert retaliation claims against Defendant in *Barrett I*. Defendant also surveys a number of cases in this circuit where plaintiffs advanced two separate legal theories but the court nevertheless found that the matter was claim precluded. *See, e.g.*, *Kelly v. City of Alexandria*, Case No. 1:19-cv-985, 2019 U.S. Dist. LEXIS 234896, at **5-6 (E.D. Va. Nov. 6, 2019), *aff'd*, 830 F. App'x 722 (4th Cir. 2020) (finding that the plaintiff's claims were precluded because the core operative facts alleged were identical to those in the first suit even though the claims themselves turned on different legal theories).

In evaluating the second prong of the claim preclusion test adopted in this circuit, courts look to "whether the suits and the claims asserted therein 'arise out of the same transaction or series of transactions or the same core of operative facts.'" *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (quoting *In re Varat Enters., Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996)). That evaluation compares the facts in each suit rather than the nature of the claims themselves. *Id.*

---

[2] This Court notes that Plaintiff's Opposition Brief exceeded the page limit requirements and therefore this Court does not consider the arguments raised after page 30 of the briefing. *See* Local Civil Rule 7(f)(3). Even if this Court did consider the arguments, they would not change the Court's conclusion.

(recognizing that if courts "focus[ed] on the claims asserted in each suit, [they] would allow parties to frustrate the goals of *res judicata* through artful pleading and claim splitting" especially because [a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law").

Here, Plaintiff's claims in *Barrett II* are inextricably intertwined with precisely the same series of events described in *Barrett I*. While Plaintiff goes into greater detail in her Amended Complaint regarding the nature of her unearthing alleged fraudulent practices by her employer and her superiors' subsequent dismissiveness as well as her eventual termination, each of these facts were already raised in Plaintiff's *Barrett I* SAC. Together, these facts represented the same *core* collection of operative facts giving rise to each claim Plaintiff has pleaded to date. Plaintiff fails to raise any claims of wrongful termination against Defendant despite being furnished with the same repository of detailed facts for the period spanning 2016 until the beginning of 2018. *See Varat*, 81 F.3d at 1315 (noting that *res judicata* bars relitigation for "every claim that might have been presented" from the same core operative facts).[3] By permitting Plaintiff's claims to continue in this case, this Court would be allowing for the "relitigating [of] issues that were or could have been raised" in the prior action, which would reward "claim splitting" and frustrate "judicial efficiency." *See Moitie*, 452 U.S. at 398; *Pueschel*, 369 F.3d at 354; *Microsoft*, 355 F.3d at 325.

---

[3] Plaintiff raises *Housing Rights Center v. Sterling*, 404 F. Supp. 2d 1179 (C.D. Cal. 2004) to advance a standard for evaluating *res judicata* which directly clashes with this circuit's precedent:

> [R]es *judicata* bars later litigation only when the issues decided in the prior adjudication were identical to issues raised in the present action. Claims are identical if the two suits involve infringement of the same primary right.

*Id.* (internal citation omitted). This Court will not apply precedent which competes with that of this circuit.

Construing Plaintiff's arguments liberally, this Court also rejects Plaintiff's all-encompassing argument that this Court is required to review *de novo* the agency letter issued by DoS in response to Plaintiff's administrative filing with the OIG. This Court finds *Pearson v. Owen Elec. Steel Co.*, No. 3:18-946-MGL, 2019 WL 6210442 (D.S.C. Nov. 21, 2019) ("*Pearson II*") instructive. In *Pearson I*, the plaintiff filed a lawsuit under the Family and Medical Leave Act and the state workers' compensation statute arising from an injury sustained in June of 2016. *Pearson II* involved plaintiff's lawsuit against the defendant under the Americans with Disabilities Act ("ADA") arising from the same operative facts during a "similar time period." *Pearson II*, 2019 WL 6210442, at *3. The plaintiff argued that he was unable to bring his ADA cause of action in *Pearson I* because he was waiting on his right to sue letter from the Equal Employment Opportunity Commission ("EEOC"), which was a condition precedent to an ADA claim. The district court held that given the claim in *Pearson II* arose from the same nucleus of operative facts as those in *Pearson I*, the plaintiff was "on notice to include those claims" in the first suit. *Id.* Consequently, the plaintiff's only recourse to preserve his ADA claim would have been to request a stay in *Pearson I* pending the receipt of his right to sue letter from the EEOC. *Id.*

Here, Plaintiff neglected to raise any of her retaliation claims in *Barrett I*, despite having every opportunity and ability to do so. At minimum, Plaintiff could have filed the FCA claims not requiring administrative exhaustion that she ultimately filed in *Barrett II*. Rather, Plaintiff delayed filing the FCA claims until several months after the Fourth Circuit's affirmance in *Barrett I*. She also waited to file her NDAA claim with the DoS OIG until July 12, 2020—over a year after the Court's final judgment in *Barrett I*.[4]  *Compare Barrett I with Lee v. Norfolk S. Ry. Co.*, 187 F.

---

[4] This Court notes that the applicable statute of limitations for whistleblower claims under 41 U.S.C. § 4712 is no more than "three years after the date on which the alleged reprisal took place." 41 U.S.C. § 4712(b)(4). If Plaintiff's NDAA claim did not arise from the same core

11

Supp. 3d 623, 629-30 (W.D.N.C. 2016) (rejecting a claim splitting defense because (1) the parties agreed during discovery in the first lawsuit to split a race discrimination claim and a whistleblower retaliation claim filed with the Occupational Safety and Health Administration ("OSHA") under the Federal Railroad Safety Act ("FRSA") and (2) the plaintiff raised the FRSA claim with OSHA *while* the first lawsuit was pending). Plaintiff's filing timing makes her claim splitting appear strategic.

In order to properly advance her NDAA claim, Plaintiff could have filed earlier with the DoS at the time she and her lawyers filed the original lawsuit and then requested a stay in *Barrett I* until the DoS OIG had issued a decision in the matter. Instead, Plaintiff did not pursue the NDAA claim during the entire pendency of the *Barrett I* litigation and decided to file the claim after the Fourth Circuit had heard oral argument in *Barrett I* on appeal. When a claim requiring agency exhaustion arises from the same core operative facts as those alleged before a district court, notice must be given to the district court and the parties that the claimant has or intends to proceed with such a claim so as to promote the interests of judicial efficiency. To hold otherwise would potentially handicap a district court's ability to square its rulings on the same core operative facts with an agency ruling related to those same core operative facts. Such inconsistencies would then precipitate further litigation that could have originally been addressed entirely in one proceeding.

For these reasons, this Court holds that all of Plaintiff's claims in this case share the same identity of the cause of action in *Barrett I*.

---

operative facts as those claims filed in *Barrett I*, Plaintiff would only be bound by the three-year statute of limitations in bringing her NDAA claim and thus have to file her claim no later than January 31, 2021. She complied with that requirement.

3. Identity of parties or their privies in the two suits.

As to the third prong, Plaintiff does dispute that Defendant is in privity with PAE Government Services, Inc.—one of the defendants in *Barrett I*.

Two parties are in privity with one another when "the parties hare a contractual relationship, owe some kind of legal duty legal duty to each other, or have another legal relationship such as co-ownership." *Columbia Gas Transmission, LLC v. David N. Martin Revocable Trust*, 833 F. Supp. 2d 552, 558 (E.D. Va. 2011). A wholly owned subsidiary is considered in privity with its parent company when applying *res judicata* principles. *See Mitchell v. United States Bank Nat'l Ass'n*, No. TDC-19-2225, 2020 WL 3050739, at \*\*5-6 (holding that a parent and a subsidiary were in privity "either because [the parent] had the ability to control the prior litigation as it related to [the subsidiary], or because its interests were adequately represented by [the subsidiary]") (citing *Martin v. Am. Bancorporation Retirement Plan*, 407 F.3d 643, 651 (4th Cir. 2005)); *see also Saudi v. Ship Switzerland, S.A.*, 93 F. App'x 516, 520-21 (4th Cir. 2004) (holding that a subsidiary that is a "mere corporate vehicle" controlled by the parent establishes a relationship of privity); *Whitehead v. Viacom, Inc.*, 233 F. Supp. 2d 715, 721 (D. Md. 2002), *aff'd sub nom.*, 63 F. App'x 175 (4th Cir. 2003) (holding that a parent was in privity with its subsidiary for purposes of *res judicata* and therefore the parent was bound by the results in the prior case involving that subsidiary).

Here, the original defendant, PAE Government Services, Inc., against whom all counts were dismissed in *Barrett I*, is listed as a subsidiary in Exhibit 21.1 of Defendant's latest Form 10-K/A filing with the Securities & Exchange Commission. *See* PAE, Inc. Form 10-K/A, Exhibit 21.1 (as of Dec. 31, 2020); *see also* 17 C.F.R. § 229.601(a)(21) (describing that 10-K filers are required to list all significant subsidiaries in Exhibit 21.1 of Form 10-K). Defendant clearly

13

exercises ownership authority over the PAE Government Services, Inc., a defendant named in the prior suit. Moreover, Defendant's role as the parent allowed it the "ability to control the prior litigation as it related to" PAE Government Services, Inc. in *Barrett I*. Therefore, this Court finds the two parties were in fact in privity at the time Plaintiff filed suit in *Barrett I*.

Accordingly, all claims Plaintiff's Amended Complaint alleges against Defendant are subject to claim preclusion and are thus dismissed.

## IV. CONCLUSION

For the reasons articulated in this opinion, it is hereby ORDERED that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 19) is GRANTED as to all counts in Plaintiff's Amended Complaint (Dkt. 15).

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

It is SO ORDERED.

Alexandria, Virginia
February 16, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge